Edward J. McDONNELL,
Plaintiff-Appellant,

v.

MICHIGAN CHAPTER # 10, AMERICAN INSTITUTE OF REAL ESTATE APPRAISERS OF the NATIONAL ASSOCIATION OF REALTORS, Defendants-Appellees.

No. 76–2677.

United States Court of Appeals,
Sixth Circuit.

Argued June 23, 1978.

Decided Nov. 6, 1978.

Morton H. Collins, Collins & Einhorn, Southfield, Mich., for plaintiff-appellant.

Douglas D. Roche, Robert P. Ufer, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendants-appellees.

Before MERRITT, Circuit Judge, and CECIL and PECK, Senior Circuit Judges.

MERRITT, Circuit Judge.

Plaintiff, McDonnell, appeals from an order dismissing on summary judgment his private antitrust suit against the American Institute of Real Estate Appraisers and its Michigan chapter, of which he is a member. The complaint alleged that the professional association, through its local chapter, had instituted unfounded and procedurally unfair disciplinary proceedings against McDonnell designed to discredit his professional reputation among purchasers of appraisal services, and to eliminate him from effective competition with appraisers who remained members in good standing of the association. The District Court dismissed the complaint on the basis of the general denial contained in two short affidavits submitted by the defendants along with the motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure governs the termination of lawsuits short of trial by summary judgment. Under subsection (c) of the Rule, the burden rests initially with the moving party to demonstrate the absence of a genuine issue warranting trial. The defendants' two affidavits failed to discharge this burden.

McDonnell's complaint adequately pleads, both elements of the offense of monopoly under section 2 of the Sherman Act, which are: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). McDonnell alleges that Institute members control substantially all of the appraisal business from large lending organizations financing major construction projects, and he cites *two* means by which the Institute is illicitly maintaining and exploiting that power. He alleges that the Institute is manipulating its code of ethics so as to limit its membership in order to diminish competition. He also claims the existence of a group boycott, an agreement among the Institute membership that those members associated with large lenders will cause the lenders to hire only Institute appraisers.

The District Court ruled that there was no genuine issue as to the first element—the quantum of the Institute's market power—and found that element lacking. We disagree. The defendants' affidavits establish at most that the majority of real estate appraisers doing business in Michigan are not members of the Institute. But McDonnell's claim is not that the Institute has too many members. Indeed, his claim is precisely the opposite—that the Institute has too few members, who control too much of the real estate appraisal business. Defendants' submissions concerning the percentage of the total number of real estate appraisers who belong to the Institute do not permit any conclusion about the critical issue raised by McDonnell's monopolization claim—the percentage of the aggregate appraisal business in the relevant market controlled by Institute members.

As for the acts McDonnell has alleged to establish the second element of his monopolization claim, we agree with the District Court that the defendants' figures comparing the small number of Institute members disciplined with the large number of new members admitted during the recent past effectively refute McDonnell's charge that the Institute has been manipulating its rules so as to limit its membership and exploit its alleged monopoly power.

If that had been the only unlawful practice McDonnell had alleged to establish the second element of his claim, we think he would have been required to come forward with some contrary information or face summary judgment for failure to raise a genuine issue as to the facts needed to prove the second element. But that is not the case. McDonnell has also alleged that the asserted agreement among Institute members to keep to themselves the appraisal business generated by large lenders amounts to an unlawful group boycott of appraisers like himself who are not members in good standing of the Institute. Group boycotts of the sort alleged constitute illegal restraints of trade under section 1 of the Sherman Act, "absent [some] justification derived from the policy of another statute or otherwise." *Silver v. New York Stock Exchange,* 373 U.S. 341, 348–49, 83 S.Ct. 1246, 1252, 10 L.Ed.2d 389 (1963). While the defendants' affidavits effectively dispute the existence of the alleged agreement, they fall far short of resolving that dispute conclusively against McDonnell.

■ We are not persuaded by either of the reasons cited by the District Court in its memorandum opinion for dismissing the group boycott claim. It is no answer to a facially sufficient restraint of trade claim under Section 1 of the Sherman Act that the particular restraint alleged will not wholly destroy its victim's business. Even if the defendants had successfully shown that McDonnell has other opportunities available to him to practice his profession despite his loss of standing in the Institute, the fact would remain that the alleged agreement effectively forecloses him from competing for that portion of the appraisal business reserved exclusively to members in good standing of the Institute. *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 213, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

■ Nor do we think that the participants in an unjustified group boycott may insulate themselves from antitrust liability merely by showing that they afforded their victims procedural due process before imposing the boycott. *Silver v. New York Stock Exchange, supra,* upon which the District Court apparently relied, recognizes that certain group boycotts may be deemed reasonable restraints of trade because they serve some overriding public policy. And *Silver* requires that such combinations exercise their power to exclude competitors from the marketplace in a manner consistent with that policy. But *Silver* does not provide any measure of antitrust immunity to group boycotts that are without policy justification, no matter how fairly they claim to deal with their victims.

The public policy justification for the group boycott alleged in this case is still subject to dispute, as, indeed, is the whole question whether defendants are even engaged in such a boycott. They cannot, we conclude, avoid a trial on those issues simply by showing that McDonnell was provided with notice and a hearing before he was disciplined under the Institute's rules.

■ For the reasons stated, we find that the defendants have failed to establish the absence of a genuine issue of material fact as to the allegations of McDonnell's complaint. Until the deficiencies of the defendants' affidavits are remedied, McDonnell is not required by Rule 56 to supplement his pleadings with "significant probative evidence" that his allegations are true. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). See also *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 159–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). We therefore conclude that the order granting summary judgment should be reversed and the case should be remanded to the District Court with instructions to reinstate the

complaint. Accordingly, it is so OR-DERED.