NORMAN P. PARENT & another[1] vs. STONE & WEBSTER
ENGINEERING CORPORATION.

Bristol. May 7, 1990. - July 18, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Negligence*, Statute of repose, Construction engineer, Duty to warn. *Repose, Statute of. Statute*, Construction. *Practice, Civil*, Summary judgment. *Actionable Tort. Words*, "Improvements."

The installation of an electrical distribution panel at an electric utility plant by a construction engineering firm constituted an "improvement to real property" within the meaning of the statute of repose contained in G. L. c. 260, § 2B, with the result that where more than six years had elapsed between the allegedly negligent installation and the commencement of an action for resulting injuries, the firm's "improvement" could not be relied upon as a basis for a negligence suit. [110-112]

In a negligence action arising from the failure of a construction engineering firm to warn a plaintiff of high voltage in a distribution panel at an electric utility plant while the defendant firm was performing its duties pursuant to a contract in conjunction with the coal conversion of the plant, the record on the defendant's motion for summary judgment presented a dispute as to whether the defendant, while performing its contractual duties, either discovered, or should have discovered, the fact that the distribution panel at issue carried 2,300 volts and was not properly labeled, and whether the defendant should have corrected the hazard or brought it to the attention of the utility's management. [112-115]

CIVIL ACTION commenced in the Superior Court Department on May 15, 1987.

The case was heard by *Chris Byron*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

---

[1]His wife, Heidi Parent.

*Charles A. Murray, III,* for the plaintiffs.

*Gordon L. Doerfer* (*Bruce D. Berns* with him) for the defendant.

GREANEY, J. This negligence case is before us after entry of summary judgment in the Superior Court for the defendant, Stone & Webster Engineering Corp. (Stone & Webster), pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). We transferred the case to this court on our own motion. We must determine whether Stone & Webster, the moving party, has satisfied its burden of demonstrating that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. See *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986).

The background of the case is as follows. The plaintiff Norman Parent (Parent) is an electrician employed by Montaup Electric Company (Montaup), which operates an electrical generating plant in Somerset. On March 10, 1987, Parent was working in the breaker house at the Somerset plant, using an instrument to test for voltage drops in an electrical distribution panel.[2] Unbeknownst to Parent, the panel he was testing carried a particularly high amount of electricity — 2,300 volts. During the testing, an electrical "arc-over" occurred and Parent was severely burned.

Stone & Webster, a firm which provides engineering, architectural, and construction management services to utility companies, installed the distribution panel at the Montaup plant in 1958. It did no further work at the plant until 1982, when it entered into a contract with Montaup to provide certain services in conjunction with the coal conversion of the Somerset plant. Under that contract, portions of which were before the motion judge, Stone & Webster is designated the project manager for the conversion project. In addition to other tasks, Stone & Webster was responsible for conducting an evaluation of the plant's station service electrical system,

---

[2]This panel was part of the "service electrical system," which provides power to the various items of machinery used in the plant.

installing conduit pipes in the distribution panel in question, and providing "participation and assistance as may be required" in a range of specified areas, including "[s]afety."

The plaintiffs argue that Stone & Webster committed negligence when it failed to affix a warning label to the high voltage distribution panel upon installing the panel in 1958, and again upon performing its duties pursuant to the 1982 contract. Parent claims that, had the panel been labeled "Danger High-Voltage" in a clear and conspicuous manner, he would not have conducted the test in the manner in which he did, or with the equipment he used, and, accordingly, would not have been injured. Parent thus sues to recover damages for his physical and mental injuries, while his wife, the plaintiff Heidi Parent, seeks recovery for the loss of her husband's consortium.

Stone & Webster claims it is entitled to summary judgment for two reasons. First, Stone & Webster argues that those portions of the negligence claim which are predicated on Stone & Webster's actions in 1958 are barred by the repose provisions of G. L. c. 260, § 2B (1988 ed.). That statute provides, in relevant part, that tort claims "for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" may not be brought later than six years from the date when the improvement is first put to use.[3] Second, Stone & Webster maintains that, subsequent to 1958, it did no work for Montaup which would give rise to a duty of care toward Parent.[4] We consider each argument in turn.

1. *The statute of repose.* The plaintiffs' complaint alleges that Stone & Webster acted negligently in 1958, when it in-

---

[3] If the property owner takes possession of the substantially completed improvement prior to putting it to actual use, the six year period begins to run on the earlier date. See G. L. c. 260, § 2B.

[4] Stone & Webster did not expressly rely on this second ground in its motion for summary judgment. However, since both parties have briefed the issue, we will consider it in determining whether summary judgment was appropriately granted. See *Paskaly* v. *Seale*, 506 F.2d 1209, 1211 (9th Cir. 1974); J.W. Smith & H.B. Zobel, Rules Practice § 56.10, at 364 n.155 (1977).

stalled the distribution panel at the Montaup plant without affixing a warning label indicating the high voltage carried therein. Since this alleged act of negligence occurred more than six years prior to the filing of the Parents' complaint, it would not be actionable if the repose statute applies to the installation work performed by Stone & Webster in 1958.

We have held that G. L. c. 260, § 2B, applies to "parties who render particularized services for the design and construction of particular improvements to particular pieces of real property." *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. 687, 696, cert. denied, 484 U.S. 953 (1987). This definition includes construction engineers such as Stone & Webster. See *id.* at 697. In addition, we have defined the term "improvements," as used in § 2B, as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Conley* v. *Scott Prods., Inc.*, 401 Mass. 645, 647 (1988), quoting Webster's Third New Int'l Dictionary 1138 (1961). See *Milligan* v. *Tibbetts Eng'g Corp.*, 391 Mass. 364, 368 (1984); *Raffel* v. *Perley*, 14 Mass. App. Ct. 242, 245 (1982). The installation of the distribution panel in 1958 was a permanent addition to the Montaup facility, clearly involved the expenditure of labor and money, and served to make the facility productive as a power generating plant. We conclude that this work constitutes an "improvement" within the meaning of § 2B,[5] and

---

[5]Installation of the electrical distribution panel compares favorably to other construction work which has been deemed to constitute an "improvement" for § 2B purposes. See, e.g., *Conley* v. *Scott Prods., Inc.*, 401 Mass. 645 (1988) (insulation); *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 823 n.8 (1986) (mooring system for a ship); *Milligan* v. *Tibbetts Eng'g Corp.*, 391 Mass. 364 (1984) (extension of a road); *Salinsky* v. *Perma-Home Corp.*, 15 Mass. App. Ct. 193 (1983) (aluminum siding); *Cournoyer* v. *Massachusetts Bay Transp. Auth.*, 744 F.2d 208 (1st Cir. 1984) (prefabricated steel building). Compare *Raffel* v. *Perley*, 14 Mass. App. Ct. 242 (1982) (survey and plans dividing property into individual lots does not constitute an "improvement" within the meaning of § 2B).

thus, due to the passage of more than six years, cannot now be relied upon as a basis for this negligence suit.[6]

2. *Duty of care.* We next consider whether the services performed by Stone & Webster at the Montaup plant between 1982 and 1984 did give rise to a duty to warn Parent of the high voltage in the distribution panel. If Stone & Webster did not incur such a duty, no negligence claim would lie against it. Cf. *O'Sullivan* v. *Hemisphere Broadcasting Corp.*, 402 Mass. 76, 78 (1988); J.R. Nolan & L.J. Sartorio, Tort Law § 206, at 339 (2d ed. 1989). The narrow issue is whether Stone & Webster has carried its burden of demonstrating that it engaged in no conduct subsequent to 1958 which would give rise to a duty of care toward Parent.

In answering this question, we must apply the standards that govern decision of a motion for summary judgment. A party moving for summary judgment (here Stone & Webster) has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as matter of law. *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). "The movant is held to a stringent standard. . . . [A]ny doubt as to the existence of a genuine issue of material fact will be resolved against the movant. Because the burden is on the movant, the evidence

---

[6]Because those 1958 acts are no longer actionable, there likewise is no cause of action under the principles stated in the Restatement (Second) of Torts § 321 (1965). That provision reads as follows:

"If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect."

Under § 321, the principles of which we have not expressly accepted, a duty of care arises as the result of an affirmative action taken by the defendant at some point in the past. Even if we were inclined to accept this principle of the Restatement in theory, we could not do so in this case because the past affirmative act relied upon as a basis for the lawsuit — Stone & Webster's installation of an unlabeled distribution panel — occurred in 1958, and therefore falls within the repose provision of G. L. c. 260, § 2B. Were we to permit the plaintiffs to pursue a § 321 claim on these facts, the effect would be to circumvent the protections the Legislature conferred under G. L. c. 260, § 2B.

presented . . . always is construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences that can be drawn from it." 10A C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure § 2727, at 124-125 (2d ed. 1983). "A court should not grant a party's motion for summary judgment 'merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.' *Hayden* v. *First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979), quoting 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2725, at 514 (1973)." *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370, cert. denied, 459 U.S. 970 (1982). Rather, "[t]he inference to be drawn from the burden placed on the moving party is that his failure to establish the absence of a genuine issue of material fact must, without more from his opponent, defeat his motion." *Community Nat'l Bank* v. *Dawes*, *supra.* See 10A C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure § 2739, at 523-524 (2d ed. 1983). See also *Brunswick Corp.* v. *Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967); *McDonnell* v. *Michigan Chapter No. 10, Am. Inst. of Real Estate Appraisers*, 587 F.2d 7, 8 (6th Cir. 1978); Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961-1963 (II), 77 Harv. L. Rev. 801, 827 (1964).

In this case, the critical document is the contract (and related attachments and memoranda) between Stone & Webster, and Montaup, Parent's employer.[7] It is settled that a claim in tort may arise from a contractual relationship, see *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 640 (1983), and may be available to persons who are not parties to the contract. See *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497, 501 (1967); *White* v. *Pines Enters., Inc.*, 728 P.2d 759, 761 (Colo. Ct. App. 1986); *Scott & Fetzer Co.* v. *Montgomery Ward & Co.*, 129 Ill. App. 3d 1011, 1019 (1984);

---

[7]The appendix contains portions of the contract between Stone & Webster and Montaup, a plan entitled "New 1500 KVA Transformer," and memoranda from Stone & Webster's project manager and project engineer concerning the electrical work.

*Schmeck* v. *Shawnee*, 232 Kan. 11, 24, 27 (1982); *Council of Co-owners Atlantis Condominium, Inc.* v. *Whiting-Turner Contracting Co.*, 308 Md. 18, 22 (1986); *Essex* v. *New Jersey Bell Tel. Co.*, 166 N.J. Super. 124, 128 (1979); Restatement (Second) of Torts § 324A (1965); J.R. Nolan & L.J. Sartorio, *supra* at 342; W. Prosser & W. Keeton, Torts § 93, at 622, 669-670 (5th ed. 1984). In particular, we have held that a defendant under a contractual obligation "is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation." *Banaghan* v. *Dewey*, 340 Mass. 73, 80 (1959). See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982); *Power Serv. Supply, Inc.* v. *E.W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122, 128 (1980); *Jennett* v. *Colorado Fuel & Iron Corp.*, 9 Mass. App. Ct. 823, 825 (1980); *Bulpett* v. *Dodge Assocs., Inc.*, 5 Mass. App. Ct. 593, 598 (1977).

Applying the principles stated above to this case, we are satisfied that Stone & Webster has not demonstrated that its contractual relationship with Montaup did not give rise to a duty of reasonable care toward Parent, Montaup's employee. Stone & Webster maintains, in its brief and through an affidavit of its project manager, Wallace C. Gruenberg, Jr., that it performed no electrical work on the distribution panel after 1958. Gruenberg contends in his affidavit that Stone & Webster's only post-1958 work in the breaker house involved installing a new cement foundation pad and new steel conduit through which new electrical cables were to be run by a different contractor and connected to the distribution panel.

We are persuaded, however, that Stone & Webster's narrow characterization of its obligations under the 1982 contract is not supported by the broad language of the contract itself. The contract expressly designates Stone & Webster as the project manager for the coal conversion project, and describes its duties broadly as "furnish[ing] the necessary engineering and technical direction, design, estimates, cost control, procurement, scheduling, construction services, labor, materials, and equipment to complete this project, including

without limitation, the furnishing of those services, specifi-
cally delineated in Appendices A1 and A2 of this Agree-
ment." Appendix A2 in turn requires Stone & Webster to
provide "participation and assistance as may be required" in
several specified areas, including "[s]afety." Other materials
before the judge with respect to the motion indicate that
Stone & Webster was required to furnish engineering and
design efforts, and to update electrical design criteria for the
plant's electrical system. The record before the judge also in-
cluded a memorandum from Stone & Webster indicating
that the firm, as part of its work on the coal conversion pro-
ject, prepared an evaluation of the entire station service elec-
trical system, which includes the distribution panel where
Parent was injured.

Thus, there is an indication in the record that Stone &
Webster, pursuant to the performance of its contractual du-
ties, either did discover, or should have discovered, the fact
that the distribution panel at issue here carried 2,300 volts
and was not properly labeled. Further, the language of the
1982 contract contains support for the proposition that Stone
& Webster should have corrected this hazard or brought it
to the attention of Montaup. In view of these considerations,
Stone & Webster has not demonstrated that a jury could
find it unforeseeable to Stone & Webster that any negligent
performance of its duties could pose serious risks to plant
employees such as Parent, including the particular risk which
actually materialized.[8]

3. *Conclusion.* It follows from what has been said that the
judge erred in granting summary judgment in Stone & Web-
ster's favor on all of the plaintiffs' claims. Summary judg-
ment is appropriate only regarding those portions of the

---

[8]Our conclusion that, based on the documents in the record, Stone &
Webster has not satisfied its burden of establishing its entitlement to sum-
mary judgment on this part of the case, makes it unnecessary to consider
the affidavit of the expert electrical engineer retained by the plaintiffs to
give opinions regarding, among other things, the safety of the electrical
distribution panel at which Parent was injured, and the manner in which
the contract should have been performed.

claims which depend on acts committed by Stone & Webster in 1958. Regarding the claims premised on alleged negligent acts that occurred between 1982 and 1984, however, Stone & Webster has failed to demonstrate that it owed no duty to Parent. The judgment is reversed, and the case is remanded for further proceedings in the Superior Court consistent with this opinion.

*So ordered.*