Welch, J.
This summary judgment motion addresses a state law issue not yet decided by the Massachusetts Supreme Judicial Court. The question is: Under what circumstances does a corporate parent owe a duty of care when an employee of the corporate subsidiary is injured at the subsidiary’s work place?
The plaintiff, Scott L. Batchelder, filed suit against Borden, Inc. (“Borden”) and Vernon Plastics Corp. (“Vernon”) on or about August 8, 1989. Plaintiff alleges that on August 29,1986, he was severely injured when his hand was caught inside an unguarded three-color printing press at Vernon, a subsidiary of the defendant, Borden. Batchelder specifically claims that his thumb was severed in the accident. Batchelder brought this action to recover for personal injuries he allegedly sustained when he was injured during the course of his employment at Vernon.
Defendant Borden now moves a second time for summary judgment pursuant to Mass.R.Civ.P. 56 (c) on all of plaintiffs claims.[2]
For the following reasons, defendant Borden, Inc.’s motion for summary judgment is DENIED.
FACTS
The facts are set forth in the light most favorable to the plaintiff, resolving all differences and drawing all reasonable inferences in favor of the plaintiff.
On August 29, 1986, plaintiff Batchelder was injured when his hand was caught inside a three-color printing press at Vernon Plastics. The press contained no material that guarded an operator’s hand or fingers from the “nip points” on this machine.
Borden purchased Vernon in the early 1970s and is the corporate parent of Vernon, its subsidiary. In 1986 Borden provided guidelines for safety for all of its subsidiaries, including Vernon. The safety manual, “Borden’s Corporate Safety and Loss Prevention Guide,” set forth requirements as to the role of management in preventing accidents. Borden’s guidelines could be interpreted to include both discretionary as well as mandatory provisions. For example, certain provisions stated that subsidiaries “shall” implement certain procedures. Mandatory provisions included monthly safety audits and review, the utilization of safety committees and the enforcement of certain safety rules. Borden also created procedures for identifying job hazards and correcting them. Borden’s safety guidelines included provisions specifically related to machine guarding. Section 14.32 set out requirements for the inspection and maintenance of guards to be installed on certain types of machines and equipment.
Vernon’s letterhead had the name Borden on it. Vernon’s Safety and Training Manager’s business card also carried the Borden name. Mr. Stykowski, who was trained by Borden, was one of the persons responsible for safety at the Vernon plant. Providing safety included minimizing hazardous working conditions.
Mr. Stykowski had knowledge of and was aware of the problem of unguarded open nip points on the machine that harmed plaintiff. The problem was brought to his attention and was discussed by the Vernon safety committee on which he served as chairman. The committee worked closely with Borden.
Borden’s Director of Corporate Safety, Dean Rothaar, was involved in attempts to correct the problem of unguarded nip points. Mr. Rothaar visited the Vernon facility on many occasions before the accident. One of his concerns at the time was placing guards on such machines as the color press. Mr. Rothaar observed the machines at Vernon and provided Vernon with advice on machinery guarding and identification of nip points. Mr. Rothaar recommended that barrier guards be installed on the subject machine. He did not, however, mandate such action. Borden had the authority to require Vernon to correct the problem of unguarded nip points.
LEGAL DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 15, 16-17 (1989).
A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element, of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” *638 Flesner v. Technical Communications Corp., 410 Mass. 805, 808 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts that would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgement.” Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Whether or not Borden owed a duty of care to Mr. Batchelder in this negligence action.
The defendant Borden brings this motion for summary judgment arguing that no liability can be imposed on it because it had no duty as a matter of law to ensure the safety of the working environment at Vernon’s plant. The defendant relies primarily on a federal district court opinion rendered by District Judge Douglas P. Woodlock, Allen v. Borden, No. 92-10005-WD (D.Mass., September 16, 1993). The defendant claims that the Allen case involved similar claims and circumstances and the same legal issues presented in the present Borden motion. On its face, the Allen case is similar. It involved a worker’s personal injury when operating a machine at the same Borden subsidiary involved in this case — Vernon Plastics.
In Allen, Judge Woodlock found that it was undisputed that Borden’s role was limited to advising its subsidiary on how well it was performing its safety duties. Judge Woodlock further found (citing Muniz v. National Can Corp., 737 F.2d 145 (1984)):
This is not a case in which Borden provided guidance to Vernon relating to the machine on which Allen was injured, or one in which Borden had special knowledge of a risk which it had an implied duty to assist its subsidiary in avoiding.
Allen at 12. In such a situation, Judge Woodlock interpreted Massachusetts state common law and concluded that, as a matter of law, the parent corporation had no duty to the employee of the subsidiary injured at the work place.
This case, however, is unlike the factual setting which confronted Judge Woodlock in Alien. Batchelder claims that Borden can be held liable because it assumed responsibility for Vernon’s safety practices and that Vernon relied on Borden in this regard. Specifically, Batchelder alleges that Borden’s safety guidelines for nip point guards were mandatory. In addition, the plaintiff alleges that Borden breached its duty of care when its representative Dean Rothaar failed to mandate the installation of barrier guards of the subject machine, after having specific knowledge of the particular problem in this case. Batchelder further argues that had Borden exercised its authority to mandate such a safety measure, the accident would not have occurred.
Plaintiff, opposing the motion for summary judgment, comes armed with an opinion of another Superior Court judge, Howard Whitehead. See Pena v. Borden, No. 92-870. Judge Whitehead confronted the exact same situation addressed in the present case; i.e. the same machine, the same alleged defect, a similar injury, and the exact same parent-subsidiary relationship. In denying Borden’s motion for summary judgment, Judge Whitehead stated that he agreed with the reasoning set forth in Judge Woodlock’s opinion, but found that there was a genuine issue of material fact regarding Borden’s control and supervision of the particular machine given the different factual setting in the Pena v. Borden case.
I find Judge Whitehead’s analysis persuasive. I find that there is a genuine issue of material fact regarding Borden’s supervision and control of this particular machine which was involved in the accident. I find that the “circumstances” and evidence presented in this case are not identical to the Allen case.
Rather, the plaintiff in this case identifies that Borden representatives visited the Vernon plant floor and inspected the machine at issue. The purpose of this visit was to inspect the machine in order to determine whether an adequate shield could be placed on the machine. Mr. Slykowski was aware of the problem of unguarded nip points on the machine in question. The problems of the machine were communicated to Borden. Further, Dean Rothaar, Borden’s Director of Corporate Safety, was involved in attempts to correct the problem of unguarded nip points. Mr. Rothaar observed the machines and provided Vernon with advice on machine guarding. He further recommended that barrier guards be installed on the machine. It is that type of guard that could have prevented this injuiy.
Unlike the situation in the Allen case, this is a case in which Borden provided particular guidance to Vernon relating to the machine that caused Batchelder injury. As well, this is a case in which Borden had special knowledge of a risk which it had an implied duty to assist its subsidiary in avoiding.
In addition, the plaintiff has pointed to evidence that Borden had recommended, but had not mandated, the implementation of shields. Whether or not Borden’s representative had a duty to mandate such shields after it took affirmative steps to inspect the particular machine and whether or not Vernon reasonably relied on such involvement by Borden, in the circumstances of this case, is a question of fact.
Therefore, even under Judge Woodlock’s analysis, Borden is not entitled to summary judgement.
A further step, however, needs to be taken. This Court does not necessarily agree with the careful analysis provided by Judge Woodlock. To summarize, Judge Woodlock interpreted Massachusetts law and found that a corporate parent would be liable if it exercised affirmative steps, a large degree of control *639 over the work place and mandated certain policies regarding safety.[3] He held that if the corporate parent merely provided guidance of safety procedures, the corporate parent would not owe a duty of care to an injured employee of a subsidiary.
This court agrees that mere guidance would not subject the corporate parent to liabiliiy. On the other hand, if the corporate parent dominated or controlled the subsidiary’s work place in terms of supervising and mandating certain procedures, that corporate parent conceivably might be considered an “employer” for purposes of the Worker’s Compensation Act, G.L.c. 152.
Thus, there appears to be a need to rearticulate the liability of a corporate parent in this situation. It seems clear that a corporate parent would be liable if the corporate parent assisted in designing the allegedly dangerous machinery. In addition, the corporate parent would be liable if its guidelines were the alleged cause of the injury. For example, if the guidelines (be they mandatory or suggested) resulted in a dangerous condition or situation, liability might attach.
Another basis of liability would be where the corporate parent did not control the subsidiary’s work place, but was involved in the maintenance of the allegedly dangerous piece of machinery. Furthermore, there would be a duly where the corporate parent did not control the subsidiary’s work place, but was aware of the allegedly defective piece of machinery and took inadequate precautions to protect the employees.
Finally, it is well settled that Borden can be held liable for negligently providing safety assistance which was relied upon by Vernon. See DaSilva v. American Brands, Inc., 845 F.2d 356, 363 (1st Cir. 1988); Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 115 (1990); Johnson v. Abbe Engineering Corp., 749 F.2d 1131 (5th Cir. 1984).
The plaintiff in this case has amassed sufficient evidence to qualify under at least the last three of these theories. Borden’s extensive involvement in safety practices at Vernon, its actual maintenance of the subject machine, the parent’s inspection of the machine in question (and awareness of the lack of nip point guards), and its alleged failure to install or mandate the guards, all raise genuine issues of material facts.
ORDER
For the foregoing reasons, defendant Borden’s Motion for Summary Judgment is DENIED.

 Borden and Vernon previously filed a motion for summary judgment arguing that they both employed the plaintiff and were entitled to immunity afforded employers under the Worker’s Compensation Act. The motion was denied by Judge Ronan on May 29, 1991.

 The Alien decision contains some language (citing independent contractor cases) which would limit the liability of a parent corporation only to situations where the parent has taken on a contractual duty to provide safety services. I do not find the analogy to the independent contractor situation persuasive in the parent-subsidiary setting. Furthermore, whether a parent corporation stands in the same shoes as an independent contractor vis avis a subsidiary appears to be a fact-bound determination not appropriate for summary judgment.