Fecteau, J.

INTRODUCTION

The Department of Environmental Protection (“DEP”) issued an administrative order requiring the plaintiff, Riverdale Mills Corporation (“Riverdale”) to stop supplying water to the sinks and toilets in the bathrooms of its facility in Northbridge, Massachusetts. Riverdale supplied the water from its privately owned bedrock well, not approved by the DEP. Riverdale contends that the private well water supplied to their facilities is not subject to the DEP’s approval requirements because supplying water to its own facilities from the private well does not fall within the bounds of DEP regulations. The DEP moves for summary judgment. Riverdale submits a cross motion for summary judgment.[1] For the reasons discussed below, the DEP’s motion for summary judgment is ALLOWED, and Riverdale’s cross motion for summary judgment is DENIED.

FACTUAL BACKGROUND

Riverdale is a Massachusetts corporation that owns and operates an industrial facility in Northbridge, Massachusetts that produces welded wire mesh. See Statement of Uncontested Material Facts of the Massachusetts Department of Environmental Correction, pp. 1. (“DEP Statement of Facts”). Riverdale pipes water from a privately owned bedrock well into the sinks and toilets in Riverdale’s facilities. See DEP Statement of Facts, pp. 2.
The DEP implements and enforces rules and regulations to ensure that all public water systems in Massachusetts deliver “fit and pure” water. See id. at 2. The DEP, interpreting its own regulations, found that Riverdale was a public water system, providing water for “human consumption.” See id. at 4. On or about August 1, 1995, the DEP issued an administrative order requiring that Riverdale immediately cease piping water from the well for human consumption. See id. at 3.
Riverdale admits piping well water into its facility to provide a water supply to sinks and toilets, but denies that the water was used for “human consumption.” See Riverdale’s Opposition to the DEP’s Motion for Summary Judgment, pp. 1-2. Riverdale further asserts that it posted signs in all bathrooms instructing employees not to drink the water supplied through the sinks. See id. at 2. Riverdale provided employees bottled water for drinking, and contends that no eating utensils or cups were cleaned in the sinks. See id. The parties remain in dispute as to whether or not the water was provided for “human consumption,” thus subjecting Riverdale to DEP regulations.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The court considers the evidence presented in the light most favorable to the non-moving party. Mass.R.Civ.P. 56(c); Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990); Flynn v. City of Boston, 59 Mass.App.Ct. 490, 491 (2003). Both parties stipulate that there is no issue of material fact in this case.
The DEP is the agency primarily responsible for ensuring that Massachusetts’ water supply is “fit, safe, and pure” for public consumption.[2] Pursuant to its responsibility to regulate water supply, the DEP promulgated the “Drinking Water Regulations” to “promote the public health and general welfare by ensuring that public water systems in Massachusetts provide to the users thereof water that is safe, fit and pure to drink.” See 310 C.M.R. 22.01(1). The DEP regulations define a “public water system” as “[a] system for the provision to the public of piped water for human consumption *691 if such system . . . regularly serves an average of at least 25 individuals daily at least 60 days of the year.” See 310 C.M.R. 22.02. The parties agree that Riverdale piped water serving an average of at least 25 individuals daily for at least 60 days throughout the year. See Memorandum of Law of the Massachusetts DEP in Support of Its Motion for Summary Judgment, p. 4. The parties dispute whether Riverdale provided water for “human consumption.”
The DEP interpreted the regulatory language “for human consumption” to include supplying water to bathrooms for the purpose of flushing toilets and washing hands.[3] See id. at 5. An agency’s interpretation of its own regulations is generally given deference. See Warcewicz v. Department of Environmental Protection, 410 Mass. 548, 550 (1991); Finkelstein v. Board of Registration of Optometry, 370 Mass. 476, 478 (1976). The standard is deference, not abdication, but the courts usually only overrule agency interpretations of their own regulations that are “arbitrary, unreasonable, or inconsistent with the plain terms of the regulation itself.” See Warcewicz, 410 Mass. at 450.
The DEP suggests that in order to protect consumers, abroad interpretation of “human consumption” is necessary, and supported by statute and policy. The federal statute that parallels the Massachusetts statute is the Federal Safe Drinking Water Act (FSDWA). See 42 U.S.C. 300f; see also DEP’s Memorandum in Support of Summary Judgment, p. 6. A California federal district court interpreted “human consumption” to include such “normal uses as bathing and showering, cooking and dishwashing, and maintaining oral hygiene.” See United States v. Midway Heights County Water District, 695 F.Sup. 1072, 1076 (E.D.Ca. 1988). A memorandum from the United States Department of Environmental Protection, Office of Drinking Water adopts the California Court’s interpretation of “human consumption,” further noting that simply providing bottled water for drinking, or posting a sign regarding drinking the tap water, is insufficient to determine that water is not being provided for “human consumption.” See USEPA Office of Drinking Water Memorandum. The DEP also specifically adopted a policy that providing bottled water in and of itself does not affect determination of “human consumption” because “human consumption” involves uses beyond drinking. See Department of Environmental Protection Policy 91-09 (March 18, 1993).
Riverdale argues that the water they pipe into their lavatories is not used for purposes other than hand-washing and flushing toilets, which does not amount to “human consumption.” The DEP is not unreasonable, however, in assuming that water piped into the sinks is usable for “human consumption” in that consumers might drink the water in spite of warnings, or wash dishes or utensils in spite of River dale’s assertions to the contrary. Furthermore, washing one’s hands or potentially brushing one’s teeth constitutes use of water for oral or personal hygiene. The DEP interpreted its authority to issue orders broadly, claiming the following; (1) To “ensure that the public water supply is safe and fit” extends beyond “safe for drinking”; (2) “human consumption” means more than simply drinking; and (3) that bathing or showering extends beyond whole body submersion to other acts of personal hygiene. Giving due deference to the DEP’s expertise and its statutoiy mission, the DEP’s interpretation of its own authority is neither arbitrary, unreasonable orbeyond the scope of DEP’s authority.
Even if all the uses specifically noted as “consumption” are not done at the Riverdale facility, in light of prior interpretation and policies, the DEP is not unreasonable or arbitrary in their interpretation of “human consumption” to include the uses of the water that Riverdale pipes into its facilities. The DEP’s interpretation squares with the public policy of protecting public health. Therefore, the Court shall give deference to the DEP’s interpretation, making it necessary for Riverdale to comply with the prior approval standard required by the DEP regulations.[4]

ORDER

For the forgoing reasons, it is hereby ORDERED that the Department of Environmental Protection’s motion for summary judgment is ALLOWED, and Riverdale’s cross motion for summary judgment is DENIED.

This is an appeal under the provisions of Massachusetts General Law chapter 111 47, which provides a right to a jury trial. However, after hearing, the parties are viewed as in agreement that this case presents no genuine issue of material fact and rather only presents questions of law, namely the authority of the DEP to issue regulations and orders and the resonableness of those regulations.

The DEP “. . . shall have the general oversight and care of all inland waters and of all streams, ponds and underground waters used by any city, town, water supply or fire district or public institution or by any water or ice company or any person in the Commonwealth as sources of ice or water supply and of all springs, streams and watercourses tributary thereto.” Mass. G.L.c. Ill, 159. “.. . [I]t[theDEP] may make rules and regulations and issue such orders as in its opinion may be necessary to prevent the pollution and secure the sanitary protection of all such waters used as sources of water supply and to ensure the delivery of a fit and pure water supply to all consumers . . .” Mass. G.L.c. Ill, 160.

The DEP argued in its brief that one cannot dispute that the water Riverdale piped into its facilities is also available for drinking, brushing teeth, and cleaning eating utensils, cups and dishes. See id. at 5.

“[N]o person . . . shall operate a public water system without the prior written approval of [DEP].” 310 C.M.R. 22.04(1).