Gordon, Robert B., J.
This negligence action arises out of injuries that Plaintiff Marciel Rodrigues (“Plaintiff’) sustained on November 10, 2012 while performing work on a construction project for the development of a restaurant and concert venue in Cambridge, Massachusetts. Plaintiff claims to have been injured when a handicap chair-lift he was helping to move across a stage at the construction site fell to the ground and struck his left thigh and ankle. Plaintiff has brought claims against Defendants Tribeca Builders Corp. (“Tribeca”), the project’s general contractor, and Cilywide Contracting, Inc. (“Citywide”), a subcontractor hired by Tribeca to perform certain construction services. Plaintiff has additionally asserted a negligence claim against Stys Hospitality, Inc. (“SHI”), a project management firm engaged by the subject property’s landlord to provide project management services on its behalf.[1] Presented for decision is SHI’s Motion for Summaxy Judgment, by which it seeks the dismissal of all claims against it by the Plaintiff.
BACKGROUND
The summary judgment record discloses the following undisputed material facts. These facts are drawn from the parties’jointly filed Rule 9A(b)(5) Statement, and any factual conflicts have been resolved in favor of the non-moving Plaintiff.
Plaintiff was employed as a laborer by CCP Enterprises (“CCP”), a construction subcontractor that provided demolition, extraction and clean-up work on the subject restaurant project. Bowery Presents, LLC (“Bowery”) was at all times relevant the landlord of the project’s underlying property. Bowery engaged Tribeca to serve as general contractor for the project, and Tribeca subcontracted with Cilywide to perform carpentry and drywall services during the construction phase.
Bowery additionally retained SHI to provide “Owner’s Project Management” services during the project. The contract signed by Bowery and SHI contemplated that SHI would carry out (as its representative) a variety of logistical, managerial and administrative functions related to the construction, most of which involved monitoring the project’s adherence to its agreed budget and schedule. SHFs role was, in essence, that of a conventional “Clerk of the Works,” functioning as the eyes and ears of the owner in respect to the administration of the project. More specifically, the contract called upon SHI to furnish the following construction-related services:
Construction
* Final Pricing ■
= Solicit bids from General Contractors and Owner Vendors
= Review and level all bids
= Advise on selection of each contractor/vendor
= Review all and any value engineering suggestions
* Permit, work with designated permit agency
*536 * Construction Administration
= Attend all job meetings
= Visit site weekly or as needed
= Inspect site for QC/QA issues
= Assess schedule progress
= Coordinate necessary parties for site related issues
= Manage and coordinate owner vendors with GC
= Review pay applications and lien releases
= Act as liaison between Landlord and the project
* Update Project Budget Control Document Monthly
* Facilitate and comment on Punch List.
Although the Owner’s Project Management contract required SHI to attend job meetings and visit the project site on a periodic basis, the terms of the agreement imposed no duly on SHI to oversee the means or methods of construction and were altogether silent on the subject of safety. SHI did not attend safety meetings held by Tribeca and its subcontractors, did not direct or instruct any construction laborers on the job-site regarding how their work should be performed, and did not by either contractual commitment or voluntary action undertake any duty to monitor the mechanics of construction or ensure the safety of site workers.[2] Although Plaintiff insists that a number of the administrative functions SHI carried out had “safety implications,” he cites no evidence that SHI either bore contractual responsibility for project safety or actually performed any safety-related role in its management of the project.[3]
Matters concerning the means of project construction, and the methods adopted to ensure site worker safety, appear to have been vested exclusively in Tribeca (as general contractor) and its duty-delegated subcontractors (including, but not limited to, Citywide). The Bowery/Tribeca General Contract[4] thus includes the following pertinent “General Conditions”:
Article 3.3. Supervision and Construction Procedures
Section 3.3.1. The Contractor [Tribeca] shall supervise and direct the Work, using the Contractor’s best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the Contract. . .
Article 3.18.1. To the fullest extent permitted by law the Contractor [Tribeca] shall indemnify and hold harmless the Owner, Architect, Architect’s consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney’s fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.
Article 10.1. Safety Precautions and Programs
The Contractor [Tribeca] shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.
Article 10.2.1. The Contractor [Tribeca] shall designate a responsible member of the Contractor’s organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor’s superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.
(Emphasis added.)
Further to the terms of its General Contract with Boweiy, Tribeca’s Subcontract with Citywide reinforced the primary responsibility for j ob-site.safety borne by this general contractor — a responsibility that Tribeca delegated (with indemnification) to Citywide for matters falling within the carpentry and drywall-related scope of its project work. Thus, the Tribeca/Citywide Subcontract provided in pertinent part as follows:
Article 4.3.1. The Subcontractor [Citywide] shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor [Tribeca] and with applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. . .
Article 4.6.1. To the fullest extent permitted by law, the Subcontractor [Citywide] shall indemnify and hold harmless the Owner, Contractor, Architect, Architects [sic] consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney’s fees, arising out of or resulting from performance of the Subcontractor’s Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor’s subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or *537 expense is caused in part by a party indemnified hereunder . . .
The foregoing contract provisions make clear that Tribeca and its subcontractors assumed full and unqualified responsibility for the safely of construction work carried out on their watch. As important, none of these contractors — Tribeca, Citywide or CCP — had any sort of agreement with SHI regarding the performance of their tasks on the project. These contractors allocated legal responsibility and liability for project construction — both among themselves and with Bowery; and, independently, SHI assumed duties to Bowery alone, which duties did not include oversight of contractor job performance and site safety.
On the day of the accident, Plaintiff reported to Chris Stasinos, the Tribeca superintendent in charge of the job-site. No one from defendant SHI was present at the construction site at this time, and no one from SHI had any knowledge of or involvement in the operation and movement of the handicap chair-lift that resulted in Plaintiffs injury. Stasinos and an employee of Citywide, Peter Walsh, were the only two individuals working with the chair-lift at the time it fell and struck Plaintiff, and neither took direction from or communicated with anyone from SHI (at that or any other time) regarding the handicap lift’s operation or movement.
DISCUSSION
Standard of Review
The standards for reviewing a motion for summary judgment are well settled. Summary judgment will be granted when, viewing the evidence in the light most favorable to the non-moving party, there exists no genuine dispute of material fact, and the moving parly demonstrates that it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Aparty moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing summary judgment must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, 404 Mass. 14, 17 (1989). The opposing party may not, however, rest on the allegations of his pleadings; nor may he rely upon “bare assertions and conclusions regarding his [own] understandings, beliefs and assumptions.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere denials and contradictions of factual allegations, without probative evidentiary support, will not raise questions of material fact sufficient to defeat a summary judgment motion. Madsen v. Erwin, 395 Mass. 715, 721 (1985).
In deciding motions for summary judgment, the Court will review the evidence in the light most favorable to the non-moving party. The Court will not, however, indulge unproven speculation, unwarranted inferences, or conclusory generalizations not supported by evidence-based facts. Cataldo Ambulance Serv., Inc. v. Chelsea, 426 Mass. 383, 388 (1998).
Plaintiffs Negligence Claim Against SHI
Applying the foregoing standards to the undisputed facts reflected in the record, the Court concludes that no viable negligence claim will lie against SHI. This conclusion rests principally upon the determination that SHI owed no legal or contractual duly of care to subcontractor employees like Plaintiff. Even if SHI could somehow be deemed to owe a duly of care to any party other than Boweiy, and the prevailing case law in Massachusetts renders this more than doubtful, the record contains no evidence that would permit the non-speculative inference that anything SHI did or failed to do in this case caused or contributed to Plaintiffs injury.
To establish a negligence claim, “a plaintiff must prove that the defendant owed [him] a duty of reasonable care, that the defendant breached this duly, that damage resulted, and that there was a causal relation between the breach of duly and the damage.” Jupin v. Kask, 447 Mass. 141, 146 (2006). Although the latter three elements of proof are generally regarded as “the special province of the jury,” id., the “existence or non-existence of a duty is a question of law” and thus suitable for resolution at the summary judgment stage. Id. Accord Lyons v. Morphew, 424 Mass. 828, 833 (1997) (“The existence of a duty of care is a question of law”). “If no such duty exists, a claim of negligence cannot be brought.” Remy v. MacDonald, 440 Mass. 675, 677 (2004). Accord Afarian v. Mass. Elec. Co., 449 Mass. 257, 261 (2007).
In Parent v. Stone & Webster Engineering Corp., 408 Mass. 108 (1990), the SJC acknowledged that “a claim in tort may arise from a contractual relationship... and may be available to persons who are not parties to the contract.” Id at 113-14. Addressing the legal liability of an engineering firm for a third party’s construction injury, the Court declared that “[a] defendant with a contractual obligation is liable to third persons not party to the contract who were foreseeably exposed to danger and injured as a result of its negligent failure to cany out that obligation.” Id at 114.
In Parent, the SJC found that the defendant engineering firm had a duly of care to a construction project employee, based on its contract to provide a broad range of services that expressly included “participation and assistance” in construction-related areas such as safety. Parent, 408 Mass. at 115. Since Parent, courts in the Commonwealth have evaluated the tort liability of design and other construction *538 professionals by focusing on the nature of the duties they assume in their contracts. See, e.g., MacInnis v. Walsh Bros., 20 Mass. L. Rptr. 635, at *9-10 (Mass.Super.Ct. March 23, 2006) (Burnes, J.) (holding that contract documents among actors in construction project “are determinative as to the duties imposed on the parties”) (citing Parent). Accord Fisher v. Spinelli & Sons, 1999 Mass.Super. LEXIS 60, at *3 (Mass.Super.Ct. Feb. 19, 1999) (Kottmyer, J.) (“In considering whether architects, engineers, or design professionals have a duty with regard to the safety of workers on a construction project, courts look to the agreement between the design professional and the owner, as well as other contract documents”).
In both Fisher and Maclnnis, this Court held that a construction project’s architectural firm had no legal duty to site workers who were injured on the job and had sued the firm in tort. In each case, the Court emphasized the fact that the project owner had hired a general contractor in whom it had invested full responsibility for worker safety, and upon whom it had imposed complete liability (with a duty to indemnify) for harms arising from the construction’s means and methods. At the same time, the Fisher and Maclnnis Courts stressed that the defendant design firm(s) had no contractual relationship of any kind with the plaintiff, the general contractor or any project subcontractor. See Fisher, supra at *2-3; MacInnis, supra at *5.
The facts of the case at bar are in material respects on all fours with Fisher and Maclnnis. Boweiy’s general contract with Tribeca makes clear that the general contractor was solely responsible for the means and methods of project construction and for ensuring the safety of job-site workers. For this reason, and again as in Fisher and Maclnnis, Tribeca assumed full responsibility to indemnify Bowery and its agents (presumably to include SHI, although the Court expresses no opinion regarding same) for any injuries arising out of the construction work carried out under its supervision. At the same time, nothing in the text of Boweiy’s owner management agreement with SHI remotely suggests that this defendant’s administrative functions extended in any way to matters of construction safety. Indeed, the word “safety” appears nowhere in the contract. Finally, and again consistent with Fisher and Maclnnis, SHI had no contractual relationship of any kind with either plaintiff Rodrigues, CCP, Tribeca, or any of the project’s subcontractors. In accordance with these authorities, the undersigned finds no factual basis upon which to rest a'duty of care owed by SHI to a construction worker whom it did not hire or manage, and who was injured at a project site whose safety was the exclusive responsibility of a general contractor and its subcontracted delegees. The absence of a legal duty owed to Mr. Rodrigues by SHI is, without more, fatal to Plaintiffs claim. See Afarian v. Mass. Elec. Co., 449 Mass. 257, 261 (2007) (“An essential element of every negligence claim is the existence of a legal duty”).
Even if SHI could somehow be deemed to owe a duty of care to project workers at the Boweiy construction site, the undisputed evidence makes clear that this project manager had nothing at all to do with the chair-lift accident that injured Plaintiff. SHI did not áttend or otherwise participate in any of the safety meetings held by Tribeca and its subcontractors, and did not direct or instruct these parties’ personnel regarding how their work should be performed. More to the point, SHI had no knowledge of, involvement in, or communications concerning the handicap chair-lift that injured Mr. Rodrigues; and the operation and movement of this piece of equipment on the day of the accident was managed by operatives of Tribeca and Citywide without input from SHI. In these circumstances, the evidence permits no reasonable finding that a breach of care by SHI contributed substantially to causing Plaintiffs injuries. See MacInnis, supra. See generally Glidden v. Maglio, 430 Mass. 694, 696 (2000) (“the plaintiffs bear the burden of proving that the defendant committed a breach of the duty to use reasonable care, that the plaintiffs suffered actual loss, and that the defendant’s negligence caused their loss. Causation is an essential element of that proof’) (citations omitted); Coastal Aviation Ind. v. Nelson, 2001 WL 914864, at *5 (Mass.Super. Ct. 2001) (allowing summaiy judgment where plaintiff demonstrated no reasonable expectation of establishing causation at trial).
In opposition to summaiy judgment, Plaintiff argues that SHTs role in the coordination and scheduling of the construction on behalf of Boweiy invested it with sufficient control over aspects of the project to give rise to a duty of care. Relying on the Restatement (Second) of Torts Section 414, our appellate courts have stated that “(o]ne who entrusts work to an independent contractor, but who retains the control of any part of this work, is subj ect to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.” Cheschi v. Boston Edison Co., 39 Mass.App.Ct. 133, 137 (1995); Corsetti v. Stone, 396 Mass. 1, 9-10 (1985). The Restatement itself, however, limits the application of this rule to circumstances that distinguish the present case:
In order for . . . [the rule] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such retention of a right of of supervision that the contractor is not entirely free to do the work in his own way.
*539 Restatement (Second) of Torts, at Sec. 414 comment c (1965) (emphasis added).
Although the issue of control is ordinarily one for the jury, summary judgment on a negligence claim asserted against an employer or contractor is appropriate if the .defendant did not exercise any “managerial control” over the given work of the subcontractor. See Dilaveris v. W.T. Rich Co., 424 Mass. 9, 11 (1996); McNamara v. Mass. Port Authority, 30 Mass.App.Ct. 716, 718 n.3 (1991) (“Although control in cases involving Section 414 is ordinarily a factual issue to be resolved by the jury, summary judgment is proper when... the plaintiff fails to provide evidence creating a genuine issue for trial”). The Court is presented with such a case here. Although SHI, to be sure, played a significant administrative role in coordinating the scheduling and other logistical aspects of the construction project writ large, there is no evidence thát it was in “control” of the job-site, directed the work of any subcontractors, or had any connection whatsoever to the operations or movement of the chairlift that caused the Plaintiffs injury.[5]
The Court finds the case at bar to be similar to Yepes v. C.H. Newton Builders, 32 Mass. L. Rptr. 328 (Mass.Super.Ct. Sept. 4, 2014) (Locke, J.). In Yepes, the Court rejected a negligence claim against a general contractor that it found did not maintain sufficient control over the injury-causing work of the subcontractor that employed the plaintiff. As here, the defendant did not employ the plaintiff, did not direct his employer-subcontractor (NEAF) in its work, and interacted with this subcontractor (which had been hired by the owner) principally in respect to matters of scheduling. Thus, while the defendant attended regular subcontractors meetings and was on most days present at the job-site, it did not direct the “means and methods” of NEAFs work. On this basis, and notwithstanding its generally expansive role (as general contractor) in matters of project safety, the Court allowed summary judgment on the negligence claim asserted against it. Id. at *6-7. In the present case, the undersigned confronts a summary judgment record reflecting an owner’s manager (SHI) that possessed substantially less control over construction safety in the project than what the Yepes Court found insufficient to attach negligence liability. Unlike the general contractor in Yepes, SHI carried out no actual construction work, directed no work of any kind at the project site, and assumed no contractual responsibility for construction-related safely in any context. In these circumstances, the Court will follow the lead of Yepes and its forebears and reject the negligence claim that has been asserted against SHI.[6]
CONCLUSION AND ORDER
In accordance with the foregoing, defendant Slys Hospitality Initiative, Inc.’s Motion for Summary Judgment is ALLOWED in its entirely.

 Co-plaintiff Marcela V. Rodrigues has brought claims individually and on behalf of her minor children for loss of consortium. Because these claims are derivative of Plaintiffs negligence action, they will not be addressed separately herein.

 Plaintiff cites the contract provision calling upon SHI to inspect the site for Quality Control/Quality Assurance issues. The Court does not believe that this contract reference signals anything beyond an owner representative’s basic duly to monitor adherence to quality standards and compliance with design specifications in the work output. There is no reasonable inference that this language, which by its terms contemplated only periodic “site inspection,” invested SHI with a day-to-day responsibility to ensure the safety of laborers.

 The Court observes in this regard that virtually every aspect of a construction project (including basic budgeting and scheduling of the work) carries a potential safety implication. Plaintiff thus argues that SHI’s efforts to restore this badly delayed project to timeliness operated to incentivize the general contractor and its agents to “cut corners” in a way that compromised safety. The Court submits that such an attenuated connection to matters of safely cannot, without more, invest a removed party like SHI with legal responsibility for injuiy-causing safety lapses that occur on the job-site.

 Plaintiff points out that these parties were still negotiating certain terms of their agreement at the time of Mr. Rodrigues’s injuiy, and that the contract was in these respects not final. The fact that the parties had not finalized the memorialization of their agreement, however, by no means signifies that there was no agreement at all. There appears, to be no dispute but that Bowery and Tribeca had agreed upon the material terms of their contract, including a shared recognition of the exclusive responsibility for construction safety borne by Tribeca and its subcontracted assigns. This aspect of their bargain was not subject to ongoing negotiations, at least not any reflected in their written communications and draft agreement. The fact that these parties in fact went forward in the performance of their respective obligations in accordance with the unsigned General Contract further belies Plaintiffs insistence that there never was an effective contract in place between them.

 Once again, Plaintiffs only evidence to the contrary is the SHI contract’s isolated reference to “inspect(ing) site for QC/QA issues," a reference the Court determines cannot reasonably be stretched to extend to matters ofworker safeiy.

 This ruling, in turn, operates to defeat the viability of Plaintiff Marcela V. Rodrigues’s companion claim for loss of consortium. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994).