ANNA S. LEAVITT, administratrix, *vs.* GLICK REALTY CORPORATION & others.

Worcester.   February 7, 1972. — July 25, 1972.

Present: SPIEGEL, REARDON, QUIRICO, & HENNESSEY, JJ.

*Evidence,* Of insurance.   *Negligence,* Of officer of corporation, One Owning or controlling real estate, Electric wiring.   *Corporation,* Officers and agents.

At the trial of an action for death resulting from a fire in a building the ownership of which the defendant corporation freely admitted, it was prejudicial error to admit evidence that the building was insured. [372]

In an action for death resulting from a fire caused by a defective electrical system in an apartment building against the officers of the corporation which owned the building, evidence warranted findings that the defendants were not negligent in the maintenance of its electrical system and were not apprised of any negligent maintenance by the independent contractor to whom they gave general orders to care for the wiring, and there was no error in the granting of the defendants' motions for directed verdicts. [372–374]

In an action for the death by fire of a roomer in an apartment building owned by the defendant corporation, a finding of negligence on its part was warranted by evidence that the fire originated in a ceiling under the defendant's control and was caused by a defective electrical system which had remained substantially unchanged for many years, that the defendant's own employees had not inspected the wiring during twenty-seven years of its ownership, and that the defendant had not specifically ensured that an electrical contractor hired to "take care of the troubles" during the past five years had inspected the wiring with care. [374–377]

TORT.   Writ in the Superior Court dated September 13, 1967.

The action was tried before *Tomasello, J.*

*Richard A. Robinson* for the plaintiff.

*Stanley B. Milton* (*William C. O'Neil, Jr.*, with him) for Glick Realty Corporation.

*Richard P. Kelleher* for Samuel Glick & another.

*John F. Buckley* for Selig Glick.

REARDON, J. These are substitute bills of exceptions arising out of an action of tort brought by Anna S. Leavitt, administratrix of the estate of Dave Shepatin, to recover for Shepatin's conscious suffering and death as a result of a fire on June 9, 1967, in a building in Worcester. The deceased was a roomer in the building. The several defendants are Glick Realty Corporation, the owner of the building; Samuel Glick, president; Sidney Glick, treasurer; and Selig Glick, clerk, respectively, of the defendant corporation. The action was tried before a Superior Court judge and jury. The plaintiff's second amended declaration contained eight counts, the first four for wrongful death against each defendant, and the other four alleging conscious suffering. The jury returned a verdict for the plaintiff on the count for wrongful death against the corporation. The judge granted motions for directed verdicts in favor of the individual defendants on the counts for wrongful death, and also for all the defendants on the counts alleging conscious suffering. The plaintiff excepted to the allowance of these motions. The defendant corporation excepted to the denial of its general motion for a directed verdict and to the denial of its motion for a directed verdict on the count on which a verdict for the plaintiff was returned. The corporation also excepted to the admission of certain evidence to which we shall allude and to certain other actions of the court on requests for rulings by both parties. The facts are complex and we shall not refer to them in extenso in view of our disposition of this case.

1. Over the corporation's objection and exception Samuel Glick was asked, "Did the Glick Realty Corp. insure the building?", to which he answered, "Yes." The corporation argues that the admission of this evidence

was prejudicial. Although evidence of insurance is generally improper in a negligence action, such evidence may be introduced with propriety for the purpose of showing ownership and control when they are in issue. *Perkins* v. *Rice*, 187 Mass. 28, 29–30. *Sibley* v. *Nason*, 196 Mass. 125, 128–129. *Baum* v. *Ahlborn*, 210 Mass. 336, 337. *Marsh* v. *Beraldi*, 260 Mass. 225, 232–233. *Lekarczyk* v. *Dupre*, 265 Mass. 33, 38–40. However, in each of the cases above cited there was a genuine dispute on the issue of ownership and control, and introduction of evidence of insurance served to enlighten the triers of fact. In those cases the evidence related directly to the particular object about which the question of ownership or control centered. This case is different. The pleadings, to be sure, raised the question whether the corporation controlled certain portions of the building but the issue was not disputed at trial. Ownership of the building was freely admitted on its behalf. Thus proof of insurance was unnecessary to show that ownership. *Minkkinen* v. *Nyman*, 325 Mass. 92, 95. See *Cowan* v. *Eastern Racing Assn. Inc.* 330 Mass. 135, 147; *Gladney* v. *Holland Furnace Co.* 336 Mass. 366, 368. The corporation correctly argues that the question put to Samuel Glick was simply whether it did insure the building without any specification as to the kind and nature of the insurance carried, that no inquiry was made by the judge as to the purpose of the question, and that "no limitation was put upon its applicability." The question and answer could have produced a variety of assumptions in the minds of the jury, and we cannot say that this was not seriously prejudicial to the corporation.

2. The judge directed verdicts in favor of the individual defendants, and the plaintiff excepted. They were officers and, as such, in charge of repairs. Since 1942, however, Samuel Glick was not involved in supervising the maintenance of the building where the fire took place although he did approve expenditures for capital improvements. The fire was caused by a combination of circumstances involving overloads of the

electrical system. The occasional electrical repair work on the building was performed by an electrical company, the treasurer of which was told from time to time by the Glicks to look into complaints involving the electrical system. All the details of the repair work were left to the electrical contractor by the Glicks, who told him that if he "saw anything that had to be done, do it, no questions asked." It is not reasonable to expect laymen to be capable of perceiving defects in an electrical wiring system merely because they are in a building once a month to collect rents and, incidentally, make inspections. There is no indication that the individual defendants had actual knowledge of inadequate wiring. Occasional complaints from tenants and bills from the electrical company for replacement of fuses, as in this case, would not lead to such a conclusion.

The present case is quite close to Tibbetts v. Wentworth, 248 Mass. 468. In that case the plaintiff was injured when the cable of an elevator was negligently left unrepaired. The elevator in the building was controlled by the Unit Manufacturing Co., of which Frank F. Wentworth was chief officer. Wentworth designated a workman to maintain the elevator. In actions against the Unit Manufacturing Co., Frank Wentworth and Annie C. Wentworth, a verdict was returned in favor of the plaintiff against the company but the judge directed verdicts for the defendants Wentworth. We upheld that action. Since the Tibbetts case is close on its facts to the present case, we quote from that opinion (pp. 472, 473): "There was no evidence to show that any act by Frank F. Wentworth in person in any way contributed to the injury. He had no connection with the premises except as agent for some other person. . . . He was an officer of the Unit Manufacturing Co., the occupant, and as such took care of repairs. He gave orders for the care of the elevator. There is no evidence to show anything more. No knowledge of failure to perform what he ordered is brought to him. No negligence of . . . any kind by him is shown. . . . "On the

evidence the case against him stands merely as that of an agent, or an officer of a corporation who is not liable for nonfeasance to any one but his principal or employer. . . . [T]he negligence in failing to inspect or to repair the elevator which led to the accident was of another person to whom the Unit Manufacturing Co., and not Frank F. Wentworth, stood in the position of superior. The servant of the Unit Manufacturing Co., and not the servant of Wentworth, was the negligent person." See *Patterson* v. *Barnes*, 317 Mass. 721, 723-724; *Evans* v. *Rohrbach*, 35 N. J. Super. 260, 264-267.

Here the individual defendants were not negligent in the maintenance of the electrical system. They simply gave general orders for the care of the wiring to an independent contractor and were not apprised that the contractor might negligently have maintained the system. It is the corporation and not the individual defendants which had the primary responsibility and liability. No error appears in the direction of the verdicts by the judge for the individual defendants.

3. We turn to a discussion of the defendant corporation's exceptions to the denial of its motion for directed verdicts since in the event of retrial this becomes of importance.

About three months before the fire Dave Shepatin rented from Thomas Burrus a single room in a seven room apartment on the fourth floor of the building owned by the corporation. Burrus rented that apartment and others in the building from the corporation, and testified that the fourth floor apartment appeared safe when he sublet the room to Shepatin. Following the fire in the building, the body of Shepatin was discovered in his room on the floor at the foot of his bed, death being due to asphyxia resulting from smoke inhalation. State and local fire officials investigated the fire and found it limited to the ceiling and the loft above the ceiling over the apartment in which Shepatin lived. The floors of the apartment were not burned. The greatest area of burning occurred in the ceiling over a pantry. Elec-

trical wiring in the building (termed knob and tube wiring) ran behind the walls and above the plastered ceilings. The fire officials testified that the probable cause of the fire was faulty wiring, since only wires above the ceiling could cause the fire, and since thirty ampere fuses, too great an amperage for the wiring, were employed in the fuse box in that apartment as well as in others. A registered professional electrical engineer and electrical contractor, called as an expert, testified that inadequate wiring was the probable cause of the fire.

The corporation was formed in 1940 and then purchased the building in that year from Harris Glick, father of certain officers of the corporation. He had purchased the building in 1914. The corporation made repairs upon receipt of notice from tenants of the need of them. One Morton Newman, treasurer of the N & N Electrical Co., Inc., testified that from 1962 he personally performed most of the electrical work on the building. He received instructions from time to time from the individual defendants but had general authority to "take care of the troubles." The wiring in the building seems to have remained substantially unchanged since first installed in 1915. Newman was never instructed to rewire the building and did not undertake to do so.

The fire officials and the expert electrical contractor placed the origin of the fire in the ceiling over the pantry. The expert, in addition, stated that the particular wiring in this building must necessarily have gone across the ceiling. This evidence warranted a conclusion that there were wires above the ceiling. The expert also voiced the opinion that the fire was an electrical fire caused by overheated wires, a situation likely to arise when circuits are overloaded.

The question is whether the evidence, viewed in its aspect most favorable to the plaintiff, warranted submission to the jury of the question of the corporation's possible negligence. We held in *Mason* v. *Lieberman,* 349 Mass. 321, 323, that an ell of a building was under the

control of its owners and not the tenant. In that case damage occurred to the property of the tenant occupying the ell from leakage through the roof. The standard of conduct of the landlord in other than common areas is that he use due care to keep his building in a reasonably safe condition. *Dolan* v. *Suffolk Franklin Sav. Bank,* 355 Mass. 665, 668–669. The ceiling in the apartment in this case was under the control of the landlord, which had the duty of using due care to see that the wiring within it remained in a reasonably safe condition. See Restatement 2d: Torts, § 361.

Electricity constitutes a dangerous instrumentality. See *Gelinas* v. *New England Power Co.* 359 Mass. 119, 124. An owner, therefore, has a duty to use due care to see that the equipment for employing that instrumentality is properly maintained to avoid risks which are foreseeable or which can reasonably be anticipated. See *Reil* v. *Lowell Gas Co.* 353 Mass. 120, 126–130 (gas). In view of the likelihood that overloaded circuits or improper electrical wiring may cause fire, we cannot say that, as matter of law, the corporation was free from negligence if it failed between 1940 and 1967 to inspect, or to cause, by specific instructions, the wiring to be inspected by some competent person. Indeed, the evidence permits the conclusion that no real check of the wiring had taken place later than 1915, shortly after the building came under the Glick family's control. If, for twenty-seven years or more, no inspection of the wiring was made by the corporation's own employees, of if the corporate defendant did not specifically ensure that N & N Electrical Co., Inc. inspected reasonably, the corporation could be found to be negligent.[1]

The issue, whether in the circumstances the corporate defendant used due care to maintain portions of the building (not a common area) under its control in a reasonably safe condition, was for the jury. The duty

---

[1] The N & N Electrical Co., Inc. could have been found to be negligent in maintaining the building's electrical system. The electrical expert testified that from time to time power was lost, and the only

was not necessarily discharged by the employment of an independent contractor carefully selected by it. See *Banaghan* v. *Dewey*, 340 Mass. 73, 79; Restatement 2d: Torts, §§ 419–421; Prosser, Torts (4th ed.) § 63, pp. 411–412. Cf. *Thurlow* v. *Provincetown*, 337 Mass. 450, 453–455.

4. The defendant corporation's exceptions to the denial of its motions for directed verdicts are overruled. Its exception to the admission of evidence of insurance is sustained. The plaintiff's exceptions to the allowance of the individual defendants' motions for directed verdicts are overruled. We find no merit in other exceptions, which are overruled.

*So ordered.*

repairs undertaken by the company were to replace fuses. This repair work was inadequate. The expert stated further that more extensive investigation of the causes of the power failure should have been taken to maintain the electrical system properly.