JOHN LYON *vs.* MICHAEL MORPHEW & others[1]
(and a companion case[2] ).

Suffolk. December 2, 1996. - May 5, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Corporation,* Officers and agents, Liability of officers. *Negligence,* Safety railing, Duty to prevent harm, One owning or controlling real estate, Construction work, Independent contractor. *Administrative Law,* Regulations.

A hospital's chief operating officer who had a general supervisory role with regard to the engineering department could not be held liable for injuries sustained by the employee of a contractor who fell from the roof of a hospital building some time after the engineering department had removed a safety railing from the roof; nor was there any special relationship between the chief operating officer and the injured person as would give rise to a duty to protect that person. [832-833]

Where a hospital's director and assistant director of engineering had no statutory or common law duty to replace a safety railing that had been removed from the roof of a hospital building and, where the dangers of working on a roof are obvious to persons of ordinary intelligence, the director and assistant director could not be held individually liable for injuries received by a contractor's employee who fell off the roof [833-834]; moreover, the previous director and assistant director of engineering who had worked at the hospital at the time the railing was removed could not be held individually liable for the same reasons [834-835].

Hospital employees who had the responsibility for monitoring a roofing project on a hospital building, whose authority under the roofing contract was only a general right to stop the work and not to control the manner in which the work was done, could not be held personally liable for any failure to have directed the contractor, who was responsible under the contract for safety, to install safety devices before commencing the work. [835-836]

CIVIL ACTIONS commenced in the Superior Court Department on November 10, 1992, and September 16, 1994, respectively.

---

[1]Michael Pankievich, Mark Foley, and Paul Kelly.

[2]John Lyon *vs* L. James Wiczai & another.

After the actions were consolidated, motions for summary judgment were heard by *Margot Botsford,* J., and the matter was reported to the Appeals Court by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael E. Mone* (*Patricia L. Kelly* & *Kathryn Hand* with him) for John Lyon.

*Raymond J. Kenney, Jr.* (*Gail L. Anderson* with him) for Michael Morphew & others.

*Thomas R. Kiley,* for Professional Liability Foundation, amicus curiae, submitted a brief.

LYNCH, J. The plaintiff seeks to recover for injuries he sustained when he fell from the roof of a building owned by Brigham and Women's Hospital (hospital). Approximately one year prior to the accident, the roof had a safety railing, but it was removed by the hospital's engineering department. Among those named in the amended complaint are the hospital's director and assistant director of the engineering department at the time of the accident and the individuals holding those positions when the safety railing was removed.[3] The plaintiff filed a separate action against the hospital's chief administrative officer during those periods, and the cases were consolidated in the Superior Court.[4]

The judge entered summary judgment for the defendants who worked at the hospital when the railing was removed and for the chief operating officer at the time of the accident, but denied summary judgment for the director and assistant director of engineering at the time of the accident. The judge then reported the matter to the Appeals Court, pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and asked the following questions:

"(1) whether, in the circumstances of this case and in light of their respective employment responsibilities, the designated employees of the hospital at the time [the plaintiff] fell and was injured in 1991 may be found

[3]Michael Morphew and Michael Pankievich were the director and the assistant director at the time of the accident. Their predecessors, Mark Foley and Paul Kelly, held those positions when the safety railing was removed.

[4]Elaine Smith was the chief operating officer at the time of the accident. L. James Wiczai held that title when the railing was removed.

individually liable to him, see, e.g., *Addis* v. *Steele*, 38 Mass. App. Ct. 433, 439-440 (1995); cf. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63-64 (1983); and

"(2) whether the individuals who held the same designated employment positions at the hospital in 1989 — when a railing around the roof of the hospital's B Building was removed — may be found personally liable for [the plaintiff's] injuries."

We granted the plaintiff's application for direct appellate review.

The following facts were relied on by the judge in disposing of the summary judgment motions as she did. The plaintiff was employed by John F. Shea Company (Shea), an independent contractor hired by the hospital to replace the roof on the "B" building. On the morning of October 31, 1991, the first day of work, the plaintiff fell while unloading bundles of roofing material being lifted to the roof by crane.

At some point in 1990, the hospital's director of engineering decided to remove the safety railing on the roof of "B" building because "[it was] old, worn and rusted, and created a false sense of security." The assistant director of engineering coordinated the removal efforts. The railing was never replaced, nor was any other fall protection device installed.

In 1991, the hospital had a new director and assistant director of engineering. As head of the engineering department, the director coordinates the repair and maintenance of the hospital's facilities. In addition, the director is responsible for developing safety procedures, inspecting departmental areas, and eliminating unsafe conditions. The director reports to the chief operating officer, who in turn oversees the department's maintenance and safety programs.

The assistant director is second in command of the department. When an outside contractor is required to do maintenance work, the director authorizes the assistant director to hire an independent contractor. The assistant director is responsible for monitoring the independent contractor's work. Both the director and the assistant director have the authority to stop work not being performed according to the contract and to direct the outside contractor to correct safety problems.

*Standard of review.* Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Dullea* v. *Safety Ins. Co.,* ante 37, 38-39 (1997); *Parent* v. *Stone & Webster Eng'g Corp.,* 408 Mass. 108, 113 (1990). "The burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case." *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 711 (1991). "A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial." *Id.*

*Employees at the time of the accident.* The plaintiff advances two theories of recovery against the defendants who worked at the hospital at the time of the accident. First, the plaintiff asserts that, because these defendants were responsible, directly or indirectly, for developing and implementing safety procedures and thus for providing a safe workplace, they had a duty to have the safety railing replaced, or provide some other safety device, on the roof of "B" building. Alternatively, the plaintiff argues that the defendants were individually liable for Shea's negligent failure to install safety precautions before starting the job because they had a duty to direct Shea to correct unsafe working conditions. We shall consider each argument in turn.

Officers and employees of a corporation do not incur personal liability for torts committed by their employer merely by virtue of the position they hold in the corporation. See *Leavitt* v. *Glick Realty Corp.,* 362 Mass. 370, 374 (1972); *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 235 (1953). The defendants may not be held individually liable for any breach of a duty which their employer, as owner of the building, may have owed to the plaintiff.[5]

Employees are liable for torts in which they personally

---

[5]The plaintiff suggests that the interplay between G. L. c. 143, § 51 (building owner liable for State building code violations), and G. L. c. 231, §§ 85K, 85W (limitations on tort liability for charitable organizations and uncompensated officers), leads to the conclusion that the Legislature intended to hold compensated officers of a charitable corporation individually liable for their employer's torts. We disagree. The Legislature limited the application of G. L. c. 231, § 85W, by stating that "[n]othing in this section shall be construed as affecting or modifying any existing legal basis for determining the liability, or any defense thereto, of any person not covered by the immunity conferred by this section." Compensated officers

participated. See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 29 (1979); *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 181 (1979). See Restatement (Second) of Agency § 343 (1958).[6] This liability stems from the general rule that every person has a duty to exercise reasonable care for the safety of others. *Kane* v. *Fields Corner Grille, Inc.*, 341 Mass. 640, 642 (1961). "There can be negligence only where there is a duty to be careful." *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989), quoting *Theriault* v. *Pierce*, 307 Mass. 532, 533 (1940).

A special relationship between the parties may give rise to a common law duty. See *Whittaker* v. *Saraceno*, 418 Mass. 196, 198 (1994) (commercial landlord to persons in common areas of rental property); *Mullins* v. *Pine Manor College, supra* at 50-51 (college to student); *LaClair* v. *Silberline Mfg. Co., supra* at 29 (employer to employee). For example, in *Mullins* v. *Pine Manor College, supra,* the college's vice-president was individually liable for failing to provide adequate security because colleges have a special duty to protect their students. In addition, a duty may be created by statute. See *St. Germaine* v. *Pendergast*, 411 Mass. 615, 619 (1992) (duty to comply with State building code); *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982) (G. L. c. 152, §§ 66, 67, duty to provide workers' compensation insurance). Absent a common law or statutory duty, an employee may not be held individually liable to a third person. See *Leavitt* v. *Glick Realty Corp., supra* at 374. See also Restatement (Second) of Agency § 352 (1958).[7] With these principles in mind, we consider whether the defendants who worked at the hospital at the time of the accident owed a duty to the plaintiff.

of a charitable organization are held to the same standard as other corporate officers. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63-64 (1983).

[6]Restatement (Second) of Agency § 343 (1958), reads: "An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed."

[7]Restatement (Second) of Agency § 352 comment a (1958) provides, "[A]n agreement to carry out the purpose of the employer, which may be to help others, does not, without more, create a relation between the agent and the others upon which an action of tort can be brought for the harm which results from a failure of the agent to perform his duty to the principal."

The hospital's chief operating officer had a general supervisory role with regard to the engineering department. This responsibility, alone, is not enough to support a finding that she personally participated in acts causing harm to the plaintiff. See *Leavitt* v. *Glick Realty Corp., supra* (president, treasurer, and clerk not liable for independent contractor's negligent maintenance of electrical system; no involvement in repair or construction experience); *Buck* v. *Clauson's Inn at Coonamessett, Inc.,* 349 Mass. 612, 614-615 (1965) (golf course president not liable for spectator's injury; not involved in maintenance of course); *Burnham* v. *Beverly Airways, Inc.,* 311 Mass. 628, 637 (1942) (president and treasurer of corporation operating airport not individually liable for plane crash; not involved in flight operations); *Tibbetts* v. *Wentworth,* 248 Mass. 468, 472-473 (1924) (chief operating officer not liable for faulty elevator repair; no connection with property other than as agent). Furthermore, there was no special relationship between the chief operating officer and the plaintiff which would give rise to a duty. Compare *Mullins* v. *Pine Manor College, supra* at 51-52 (college owed special duty to students) and *St. Germaine* v. *Pendergast, supra* at 620-621 (homeowner not liable for harm to employee of independent contractor). Absent a legal duty, there can be no personal liability.

We next consider whether the director and the assistant director owed a legal duty to the plaintiff.[8] The director and his assistant were responsible for safety policy and programs in their department. From the evidence viewed in a light most favorable to the plaintiff, it could be inferred that they played a role in determining whether the hospital should replace the railing or install an alternative safety device; however, they had no common law or statutory duty to do either.

There is no duty to protect lawful visitors from dangers obvious to persons of ordinary intelligence. *Toubiana* v. *Priestly,* 402 Mass. 84, 89 (1988). Similarly, the defendants were "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." *Id.* at 88, quoting *Gadowski* v. *Union Oil Co.,* 326 F.2d 524, 525 (1st Cir. 1964). The dangers of working on a roof are obvi-

[8]As an employee of an independent contractor, the defendants owed the plaintiff the same duty as fellow employees. *Poirier* v. *Plymouth,* 374 Mass. 206, 220 (1978).

ous. The plaintiff worked for a roofing contractor. The hazardous nature of ascending a roof is readily apparent to a reasonably intelligent person exercising a minimal care for his own safety.[9] We have never recognized a common law duty of building owners to place or maintain fall protection safety devices on roofs.

Furthermore, State and Federal safety regulations do not require property owners to install and maintain fall protection devices on low pitched roofs. Construction industry rules and regulations, 454 Code Mass. Regs. § 10.00 (1993), require contractors to provide fall protection devices during the performance of "built-up roofing work."[10] These regulations, however, apply only during the performance of roof repairs and do not establish a duty to install and maintain safety railings at other times. Absent a statutory or common law duty, the director and assistant director may not be held individually liable for failing to replace the safety railing prior to the accident.

Next, we consider whether the defendants were liable for their failure to direct the independent contractor to install safety devices before commencing the work. In the contract with the hospital, Shea agreed to provide all necessary safety devices for the "B" building roofing project. State and Federal safety regulations require the roofing contractor to equip the roof with fall protection devices, but none was in place at the time of the accident. See note 10, *supra.* The plaintiff argues that the defendants had a duty to ensure that Shea complied with the safety regulations.

In general, an employer of an independent contractor is not liable for harm caused to another by the independent contractor's negligence, unless the employer retained some control over the manner in which the work was done. See *St.*

[9]Nor was there a special relationship between the plaintiff and the defendant which existed in *Mullins* v. *Pine Manor College, supra,* where we held the college's vice-president liable for failing to take reasonable measures to protect students.

[10]In the Commonwealth, the construction industry rules and regulations, 454 Code Mass. Regs. § 10.00 (1993), require the contractor to provide fall protection devices during the performance of "built-up roofing work." Section 10.111 (8)(a) states that "[d]uring the performance of built-up roofing work . . . employees engaged in such work shall be protected from falling from all unprotected sides and edges of the roof." See also 29 C.F.R. § 1926.500 (1991).

*Germaine* v. *Pendergast,* 411 Mass. 615, 623 (1992); *Corsetti* v. *Stone Co.,* 396 Mass. 1, 10 (1985). See also Restatement (Second) of Torts § 414 (1965).[11]

However, a general right to order the work stopped such as existed here is not considered sufficient control to impose liability for a contractor's negligence. *St. Germaine* v. *Pendergast, supra.* Restatement (Second) of Torts § 414 comment c illustrates the control necessary to impose liability:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work his own way."

Here, the hospital merely retained the authority to direct Shea to correct safety violations drawn to its attention. Shea, a roofing contractor, provided the workers, materials, and technical expertise to perform the work and provide necessary safety precautions. The defendants did not retain such a right of supervision that Shea was not entirely free to do its work on its own. See *Leavitt* v. *Glick Realty Corp.,* 362 Mass. 370, 373-374 (1972). The hospital's right to stop the project is precisely the type of general right that the Restatement says should not trigger liability.

We conclude that the employees who worked at the hospital at the time of the accident cannot be held individually responsible for the plaintiff's injuries.

*Employees at the time the safety railing was removed.* The

[11]Restatement (Second) of Torts § 414 (1965) provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

plaintiff contends that defendants who worked at the hospital at the time the railing was removed had a duty of care because taking down the safety railing created an unreasonably dangerous condition.

As we noted earlier in the opinion, "[t]here can be negligence only where there is a duty to be careful." *Supra* at 832. Because we have determined that there was no duty to provide a safety railing on the roof of the "B" building, we conclude that removing the railing thought to be corroded did not constitute negligence. Thus the defendants who worked at the hospital at that time cannot be held individually liable to the plaintiff.

Summary judgments for the defendants Mark Foley, Paul Kelly, Elaine Smith, and L. James Wiczai are affirmed. Summary judgments are to be entered for the defendants Michael Morphew and Michael Pankievich.

*So ordered.*