Fishman, J.
In this action, to the extent relevant to the motions before the Court, Henry W. Coz (“Coz”), plaintiff-in-counterclaim in Civil Action No. 99-01152B (“Case 1”), and plaintiff in Civil Action No. 01-2674B (“Case 2”), seeks damages for breach of contract against Plastics Color & Compounding, Inc., f/k/a Coz Plastics, Inc., (“PCC”), defendant-in-counterclaim in Case 1, and interference with contract against PMC, Inc. (“PMC”), defendant/third-party plaintiff in Case 2. Specifically, Coz, the owner of certain commercial property in Northbridge, Massachusetts, has made property damage claims against his former tenant, PCC, and PMC, PCC’s parent company. This matter is before the Court on PMC’s and PCC’s motions for partial summary judgment pursuant to Mass.R.Civ.P. 56.[2] For the reasons set forth below, both motions are ALLOWED IN PART and DENIED IN PART.

BACKGROUND

The undisputed facts as revealed by the summary judgment record are as follows.
Coz owns commercial property in Northbridge (“the property”), consisting of approximately 350,000 square feet in a complex of former mill buildings. These buildings were constructed during a period ranging from the mid-1800s to the mid-1900s. Coz used the property for a thermoplastic compounding and extrusion operation until 1968. In that year, he sold the business to Allied, but retained ownership of the property and leased same to Allied.[3] Allied’s tenancy was governed by a series of leases from 1968 through 1997. The most recent was executed in October 1985 (“the Lease”), with two subsequent amendments relating the amount of leased space. Allied, a diversified business headquartered in Chicago, ran the operation in Northbridge until it sold the business to PCC on October 14, 1997.[4] PCC is a plastics manufacturing and distribution business.[5] As part of its acquisition, PCC assumed the Lease.
The Lease and a document entitled, “Consent to Assignment and Assumption of Lease” (“Consent”), are the principal documents at issue here. Pursuant to various options to extend, the Lease was to expire on December 31, 2000. The Lease provides, in pertinent part:
6.B. Repairs. Except for damage by fire or unavoidable casualty, [Lessee] will make repairs to the Leased Property, including replacement of items which cannot be repaired, which shall be necessary to keep the Leased property in as good repair, order and condition as the Leased property now is or is put in at the commencement of the term of this Lease, except for reasonable wear and use and damage by fire or unavoidable casualty.
6.H. Indemnification. Lessee shall hold Lessor harmless and indemnified from all loss, damage, liability or expenses arising out of Lessee’s use or neglect of the Leased Property, including but not limited to Lessee’s use or neglect of water, steam, gas, electricity, the machinery and equipment or arising out of any injuiy or damage to persons or property on the Leased Property... except that this provision shall not apply to any loss, liability or expense arising from the Lessor’s omission, fault or negligence or other misconduct.
6.J. Redelivery of Leased Premises. At the expiration or other termination of this Lease, Lessor will remove from the Leased Property all property which is not the property of the Lessor... and Lessee will turn over to the Lessor the Leased Property in as good repair and condition as it was in at the commencement of this Lease, or was put in by the Lessor or Lessee during the Lessee’s tenancy, rea *363 sonable wear and tear and damage by fire or unavoidable casualty only excepted.
12. Miscellaneous. [N]o waiver, change, modification or discharge by either Lessor or Lessee of any provision of this Lease shall be construed to have been made or shall be effective unless in writing and signed by both Lessor and Lessee . . . This Lease contains the entire agreement of the parties.
At the time of its purchase of Allied’s assets and its assumption of the Lease, and consistent with a provision of the Lease requiring Coz’s written consent to an assignment of the Lease, the Consent was executed by Coz on October 10, 1997.[6] Pursuant to the Consent, Allied remained liable to Coz for all acts and circumstances arising before or after the effective date of the Consent. With regard to PCC, the Consent provides:
Effective on the Effective Date, [PCC] assumes all obligations as lessee under the lease occurring or arising out of the actual or alleged facts or situations occurring on or after the Effective Date. [PCC] shall not be responsible for any acts, omissions or breach of the lease by Allied prior to, on or after the Effective Date; provided, however, that Coz does not waive any remedies provided for in the lease or by law.
PCC vacated the property in October or November 1999. It removed all the equipment that it had purchased from Allied, and apparently made no efforts to make any repairs to the property. Coz maintains that there is in excess of two million dollars of damages to the property for which PCC is allegedly responsible.[7]

DISCUSSION

Summary judgment may be granted only where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 420 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This has been described as a heavy burden, with any doubts as to the existence of a genuine issue of fact to be resolved against the movant. 10A Wright, Miller and Kane, Federal Practice and Procedure, §2727 at 124-25 (2d ed. 1983) (discussing identical federal rule); see also Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991) (all conflicts resolved and all inferences to be drawn in favor of party opposing the summary judgment motion). The Court is not in a position, at this pretrial stage, to weigh evidence, or to assess the credibility of any witness who would testify to a particular fact. Gordon v. American Tankers Corp., 286 Mass. 349, 353 (1934); see also Kelly v. Rossi, 395 Mass. 659, 663 (1985). Nor should a court grant summary judgment to a party “merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial. ” Hayden v. First National Bank, 595 F.2D 994, 997 (5th Cir. 1979), quoted with approval in Attorney General v. Bailey, 386 Mass. 367, 370 (1982). Unless the court is convinced that the party bearing the burden of proof has “no reasonable expectation” of satisfying that burden such that there is a complete failure of proof on at least one essential element, summary judgment would be inappropriate. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1997); see also Lyon v. Morphew, 424 Mass. 828, 831 (1994). Applying these principles to the case at bar, this Court concludes that summary judgment is appropriate on the issue relating to the meaning of the terms of the contracts that govern in this case, but not on the issue of whether there are no recoverable damages from any alleged breach of these contracts.
The first issue presented in this case is whether the terms of the Consent are clear and unambiguous, and, if so, whether those terms relieve PCC of any liability for property damage which occurred prior to the date the Lease was assigned by Allied to PCC. Coz does not dispute that the Consent was a contract. Rather, he claims that its terms are ambiguous and cannot be gleaned from the language of the Consent alone.[8] “It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.” Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). “In a written contract, the wording employed is particularly significant in discerning the intent of the parties.” Louis Stoico, Inc. v. Colonial Development Corp., 369 Mass. 898, 902 (1976). Where there is nothing ambiguous in the language of the contract, “the court cannot subvert its plain meaning.” Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). The interpretation of an unambiguous contract is a question of law for the court and not an issue of fact for trial. Id. Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 465 (1995). “A [contract] term is ambiguous only if it is susceptible of more than one meaning and reasonable intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998).
It is difficult to imagine how the parties could have expressed their intentions more clearly and unambiguously than by the language appearing in the Consent. PCC’s liability was expressly limited by language that stated that it “shall not be responsible for any acts, omissions or breach of the lease by Allied prior to, on or after the Effective Date,” that “Effective Date” being a clear reference to the date PCC was to assume the tenancy of the property. Indeed, there is nothing in- *364 temally inconsistent in the language of the Consent nor are there inconsistencies with the language of any other agreements that are part of the summary judgment record. The Consent expressly and consistently provides that PCC is assuming all obligations of the lease relating to acts occurring on or after .the Effective Date, and the Consent makes clear that Allied is not being released by this agreement of its direct liability as lessee. Virtually identical language limiting liability to acts occurring after PCC assumed the lease appears in the Assignment and Assumption of Lease entered into by PCC and Allied.[9] Nor can the Language of the lease itself, which, of course, predates the Consent, be construed as rendering the language of the Consent ambiguous. Clearly, the obligations of the Lease are limited by the terms of the Covenant, and any other interpretation would be to construe the contract in such a way as to render meaningless the language in the Covenant which is at issue. The law does not countenance such a result. See Lexington Ins. Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995).[10]
Thus, PCC and PMC are entitled to summary judgment to the extent that this Court finds that their liability is expressly limited by the terms of the Covenant. PCC and PMC, however, have not met their burden with regard to their claim that Coz has shown no element of damages recoverable from PCC. Genuine issues of material fact exist regarding whether portions of the $2.355 million property damages claims are based on acts, omissions or breach of the Lease which occurred on or after PCC’s tenancy commenced. For example, there is a question regarding the amount of damages attributable to PCC’s exit from the premises. Moreover, Coz claimed damage from the exhausts from PCC’s compounding activities and other damages resulting from failures of maintenance. These contested issues of fact, and potentially others relating to damages, cannot be resolved by summary judgment.

ORDER

Accordingly, for all the foregoing reasons, PCC’s and PMC’s motions for summary judgment are ALLOWED IN PART and DENIED IN PART. The liability of PCC and PMC, if any, is limited by the terms of the Consent to Assignment and Assumption of Lease, and they are not responsible for any acts or omissions occurring before PCC’s occupancy of the subj ect premises.

Coz’ property damage claims and claims for required maintenance to Coz’ boiler and windows are contained in Counts I (breach of contract) and II (G.L.C. 93A) of his Answer to Second Amended Complaint and Counterclaim in Case 1, and in Count I (interference with contract) and Count II (c. 93A) of the Complaint in Case 2.

Coz actually served as chief executive officer of the Allied division at his property from 1968 to October 1996.

Allied filed for bankruptcy in 2000.

PCC, formerly known as Coz Plastics, Inc., was formed exclusively for the purchase of Allied’s Northbridge division assets.

The Lease required that Coz neither unreasonably withhold nor delay such consent.

Coz also claims damages for PCC’s alleged failure to complete an agreement undertaken by Allied to replace windows and an agreement to maintain the boiler.

Coz also argues in a footnote that the Consent unambiguously provides that PCC is responsible for all damage flowing from its vacation of the property because the agreement expressly provides that “Coz is not waiving the provisions of the Lease." The Consent, however, contains no such language. Rather, the Consent only provides that there is no waiver of “the remedies” provided for by the lease, and that language does not impact the clear language of other provisions of the Consent.

Coz, although not a party to the Assignment, argues that the presence of an indemnification provision in the Assignment and Assumption of Lease is inconsistent with PCC’s (and this Court’s) interpretation of the Consent because there would no need for that protection if the Consent limits liability. The fact that PCC secured additional protection by way of indemnification, however, does not change the plain meaning of the Consent even if as Coz urges, the agreements are to be read together.

Coz’s final argument that there exist oral agreements with Allied that modify written agreements with Allied is to no avail as Coz has failed to make any showing, assuming the existence of such agreements, as to how they are enforceable against PCC and, in any event, not limited by the terms of the Consent.