Kern, Leila R., J.
This is a wrongful death action in which the plaintiff, Jean Kelleher, in her capacity as Administratrix of the Estate of Mark Chopelas, sets forth claims of negligence against the defendants, Brandéis University and Pamela Gentile. Brandéis and Ms. Gentile now move for summary judgment in their favor. The court held a hearing on April 8, 2008. For the reasons discussed below, Brandeis’s and Ms. Gentile’s motion is ALLOWED.
FACTUAL BACKGROUND
Brandéis is an institution of higher education, incorporated in 1947 as a charitable corporation under the laws of Massachusetts. It is also the owner of property on the Brandéis University Campus. In 2003, Brandéis instituted a project known as “the New Undergraduate Residence Hall project” (“the project”). During that time, Ms. Gentile served as Director of Planning, Design, and Construction for Brandéis.
On June 3,2002, Brandéis contracted with William A. Berry & Sons, Inc. (“Berry”), for construction management services on the project. Per the agreement, Berry assumed control over construction and safely means, methods, techniques, sequences and procedures. The decedent, Mark Chopelas, was employed by Berry as a laborer. On the morning of Saturday, March 1, 2003, Mr. Chopelas was preparing to install a stairwell on the project. While in the course of removing temporary planking from a platform, he lost his balance and fell three stories to a concrete slab below, suffering fatal injuries. He was not wearing a safety harness.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’. . . that there is an absence of evidence to support the non-moving party’s case”).
In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
II. Ms. Kelleher’s Claims
1. Brandéis
Ms. Kelleher argues Brandéis owed Mr. Chopelas a non-delegable duty of care to provide a safe workplace and that the defendants breached this duty, resulting in the death of Mr. Chopelas.[3] Generally, the employer of a contractor is not liable for harm caused to another by the contractor’s negligence unless the employer retained some control over the manner in which the work was done. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 407-08 (2003), quoting Lyon v. Morphew, 424 Mass. 828, 834 (1997).
In order for [this rule] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not necessarily be *34 followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work his way.
Id., quoting Restatement (Second) of Torts §414 comment c. “If the employer retains no control over the manner in which the work is to be done, ‘it is to be regarded as the contractor’s own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it.” Corsetti v. Stone Co., 396 Mass. 1, 10 (1985), quoting Restatement (Second) Torts §409 comment b.
Here, the terms of the agreement place responsibility for site safety squarely with Berry. The agreement identified the parties, and the roles that each was to play during the project: Brandéis was the owner, Berry was the contractor. See Defendant’s Memorandum, ex. A, at 1. Berry, as the contractor, agreed to supervise and direct the work. Id. at Par. 3.3.1. The agreement specifically thrusts upon Berry the responsibility for, and control over, “construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the Contract.”[4] Id. While the agreement allowed Brandéis and its agent to visit the site to become familiar with the work and inspect the project’s quality and progress, the agreement explicitly provides that Brandéis would not be required to make on-site inspections to check the quality or quantity of the work. Id. at Par. 4.2.2.
Moreover, Berry’s supervisory duties extended to the initiation, maintenance, and supervision of all safety precautions on the project. Par. 10.1.1 of the agreement provides, “(tjhe Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and program in connection with the performance of the Contract.” Id. The agreement also provides, “[Brandeis’s agent] will neither have control over or charge of, nor be responsible for . . . safely precautions and programs in connection with the Work, since these are solely the Contractor’s rights and responsibilities under the [agreement].” Id. at Par. 4.2.2.
Furthermore, the parties’ understandings and course of conduct throughout the project reflect the contractual language. Tom Koch, a Project Executive for Beriy, and their representative for the project, stated in his deposition, “[w]e were ultimately responsible for [supervisory safety precautions].” See Defendants Memorandum, ex. 3, at 26. Mr. Koch testified that Berry was responsible for the safety of anyone on the site and that if they saw something not in compliance with requisite safely standards, it was Berry’s job to remedy it. Id. at 27-28. Mr. Koch acknowledged that it was not Brandéis’ responsibility for inspecting safely issues or correcting safety non-compliance. Id. at 28.
The undisputed evidence is that Berry had a designated site safety person, Ernie Carrier. His duties included informing everyone on the project site about necessary work-site safety precautions. See Defendant’s Memorandum, ex. 4, at 12. Mr. Carrier also conducted safely inspections of the job site daily. Id. at 29. Mr. Carrier, or a labor foreman, would complete a safety checklist at least two to three times per week. Id. at 30. The safety steps taken by Mr. Carrier as Berry’s site safety person are consistent with those of a general contractor responsible for site safety as directed by 454 Code Mass. Regs. §10.03, which sets out the general duties and responsibilities of an employer with regard to their employees’ safety.
Mr. Carrier also testified in his deposition that Brandéis did not have a role in completing the safety inspection checklist; indeed, he stated that Brandéis did not have a role, or a responsibility, in safety inspection in general. Id. at 22. John Cummings, Brandeis’s Project Manager for Capital Projects Group, echoed these statements when he indicated in his deposition that while he was on the site daily, he was only there to observe progress and facilitate sequencing; he did not have responsibility for site safety. See Plaintiffs Memorandum, ex. 1, at 17-18. He stated that while he, personally, would have brought attention to Berry of any safety concerns he may have had, he could not recall any instances where he did so. Id. at 19.
Viewing this evidence presented in the light most favorable to Ms. Kelleher, this court concludes that at all times during the project, Berry assumed the responsibility of maintaining a safe work site. Both the contractual language and the understandings and conduct of the on-site personnel indicate that Bran-déis relegated all control over site safety to Berry. While Brandéis did perform walk-throughs of the project, and had the ability to stop work if Berry was in non-compliance with the contractual terms, this, by itself, is insufficient to show that “the contractor is not entirely free to do the work his own way.” See Herbert A. Sullivan, Inc., 439 Mass. at 410 (insurer not vicariously liable for malpractice of attorney hired to represent insured where attorney was free to perform services his own way); Lyon, 424 Mass. at 828 (owner did not retain sufficient control over contractor such as to subject them to liability where they retained right to stop work but where contractor provided workers, materials and technical expertise). Indeed, the contractual provisions and Berry’s own employees specifically acknowledged Berry had exclusive control over site safety. This conclusion is buttressed by the fact that Berry, and not Brandéis, received fines by OSHA for safety violations in connection with the incident here. As a result, this court finds, as a matter of law, Brandéis did not owe Mr. Chopelas a duty to provide *35 a safe workplace. Compare Lyon, 424 Mass. at 835 (summary judgment appropriate where owner did not retain sufficient control over contractor to subject them to duty), with Corsetti, 396 Mass. at 11-12 (summary judgment denied where there was evidence that defendant, a general contractor, exerted sufficient control over work site safety such to raise a triable issue as to whether they owed plaintiff, an independent contractor, a duty of care).
For the foregoing reasons, Brandeis’s Motion for Summary Judgment is ALLOWED.[5]
2. Ms. Gentile
Ms. Kelleher also argues Ms. Gentile, as the Director of Planning, Design, and Construction, owed Mr. Chopelas a duty of care, and that she breached that duty of care when she failed to enforce safety protocols on the site. Employees of a corporation are only personally liable for torts in which they participated.[6] Lyon, 424 Mass. at 831-32; Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 n.9 (1985). This liability stems from the general rule that every person has a duty to exercise reasonable care for the safety of others. Id. at 832. Additionally, there are some instances where a special relationship may give rise to a common-law duty, see id. (discussing special relationships giving rise to a common law duty), or where a duty may be created by statute. See id. (discussing duties imposed by statute).
Here, there is no evidence suggesting Ms. Gentile and Mr. Chopelas had a special relationship giving rise to a common-law duty, or that Ms. Gentile owed Mr. Chopelas a duty pursuant to statute. Moreover, there is no evidence that Ms. Gentile played any part in the events that befell Mr. Chopelas. Ms. Gentile’s duties included coordinating with the architect, coordinating feasibility studies, working on the initial planning of the project, and coordinating with Brandeis’s project managers during construction. See Defendant’s Memorandum, ex. 1, Gentile’s Affidavit, at Par. 2. She did not have a role in the supervision of site safety, nor did she have a role in how the construction would proceed, its sequencing, or implementation. In fact, she could only enter the site with Berry’s approval. Id. at Par. 8. Based on the evidence presented, this court concludes that Ms. Gentile did not owe Mr. Chopelas a duty. Consequently, there can be no liability. See, e.g., Lyon, 424 Mass. at 833 (hospital’s chief operating officer not personally liable for independent contractor’s negligence where they only had a general supervisory role); Leavitt v. Glick Realty Corp, 362 Mass. 370, 374 (1972) (president, treasurer, and clerk not personally liable for negligence of independent contractor where they were not involved in work).
Accordingly, Ms. Gentile’s Motion for Summary Judgment is ALLOWED.
ORDER
Therefore, it is hereby ORDERED that the defendants’ Motion for Summary Judgment is ALLOWED.

 Ms. Kelleher argues that Brandeis’s function throughout construction of the proj ect was that of general contractor. This court disagrees. The agreement memorializes the agreement between Brandéis, who is declared as the “owner” in the contract, and Berry, who is identified as the “contractor.” Throughout the deposition testimony presented to this court, Berry is described as the general contractor. Moreover, as discussed in detail below, Berry’s functions and duties throughout the course of the project were consistent with that of a general contractor, and Brandeis’s conduct was consistent with that of an owner.

 As the contractor on the project, Berry is charged, under both Massachusetts and federal regulations, to implement certain safety procedures. In a situation, such as the present one, where an employee is subject to dangers posed by an open-sided floor or platform, the regulations call for a contractor to implement several safety procedures in order to minimize the risk posed by an open-sided floor or platform. 454 Code Mass. Regs. §10.111.

 Because this court concludes that Brandéis did not owe Mr. Chopelas a duty, it is unnecessary to address Brandeis’s argument that they are a charitable organization subjecting any judgment leveled against them to the charitable liability cap provided by G.L.c. 231, §85K.

 Officers and employees of a corporation do not incur personal liability for torts committed by their employers solely by virtue of their position in that corporation. Lyon, 424 Mass. at 831. Because this court finds that Brandéis did not owe Mr. Chopelas a duty of care to provide a safe work place, this court need not discuss any arguments Ms. Kelleher makes to this effect.